**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BLACKWATER INDUSTRIES, LLC, *et al.*, | § § § § § | |
| Plaintiffs. | | |
| V. | § § | CIVIL ACTION NO. 4:23-cv-02713 |
| DGCI CORPORATION, | § § § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me in this contract dispute is a Motion to Dismiss or Transfer for *Forum Non Conveniens* filed by Defendant DGCI Corporation ("DGCI"). Dkt. 14. DGCI contends this matter must be dismissed on *forum non conveniens* grounds because the exclusive forum for this dispute is the Circuit Court of Fairfax County, Virginia. Alternatively, DGCI requests this matter be transferred to the United States District Court for the Eastern District of Virginia, Alexandria Division. Plaintiffs Blackwater Industries, LLC and Blackwater Energy Products, LLC (collectively, "Blackwater") vigorously oppose both the Motion to Dismiss and the Motion to Transfer.

## **BACKGROUND**

On August 24, 2020, the United States Special Operations Command ("SOCOM") awarded DGCI Contract No. H9240320C0002 to build mobile oil refineries. *See* USASPENDING.GOV, https://www.usaspending.gov/award/CONT _AWD_H9240320C0002_9700_-NONE-_-NONE- (last visited May 24, 2024). DGCI turned to Blackwater to design, fabricate, and assemble components for the production of the mobile oil refineries.

On July 25, 2023, Blackwater filed this breach of contract action to recover outstanding balances on two subcontracts and two purchase orders ("PO"), and related storage and insurance charges. Blackwater's Original Complaint provides:

> 8.   Per Subcontract Number DGCI-21-C-0002-2, Defendant DGCI ordered custom mobile refining units. The remaining balance on this product is $437,139.54 for the custom work provided to the Defendant.
>
> 9.   Per Purchase Order Number DGCI 000136, Defendant DGCI ordered columns and vessels for the atmospheric distillation units and hydrogen treater reactors for the Mobile Refinery project. There is an outstanding balance of $262,111.34 for the products provided to the Defendant.
>
> 10.   Per Subcontractor Agreement OSBL-FFP-BWI-2021, Defendant DGCI received storage, transportation, and delivery services of spare parts and refined product manifold lines. The outstanding balance for these services is $2,092,770.40 for the services provided to Defendant.
>
> 11.   Per Purchase Order ISBLSPares-001-BWI-2022, Defendant DGCI ordered replacement materials and spare parts, as shown in the invoice provided to them. There is an outstanding balance of $158,671.22 for the materials provided to the Defendant.
>
> 12.   Additionally, monthly charges of $63,057.64 for the storage and insurance of equipment from [Modification] 21 are due to Blackwater and accruing each month. . . .
>
> 13.   The total value for the above services . . . is $2,950,692.50 and the current amount due for the storage costs as of July 10, 2023, is $1,001,844.42.

Dkt. 1 at 2–3.

The parties *agree* that the first four of these disputed amounts are covered by the forum selection clause of the referenced subcontract or purchase order. The parties *disagree* whether Blackwater's claim for the unpaid storage costs is also covered by a forum selection clause.

Below is a chart of the subcontracts and purchase orders at issue, including their dates of formation, forum selection clauses, and language regarding governing law[1]:

---

[1] All emphases added.

2

| Agreement & Date | Forum Selection Clause | Governing Law |
|---|---|---|
| DGCI-21-C-0002-2 ("Subcontract I")<br><br>December 21, 2020 | "All disputes under this Agreement that are not disposed of by mutual agreement **may be decided** by recourse to an action at law or inequity **exclusively** in a United States Court of competent jurisdiction located **in the State from which this Agreement is issued**." Dkt. 19-1 at 15. | "The Contract shall be governed and construed in accordance with the laws of the **State of Texas**, without giving effect to [its] choice of law principles thereof and notwithstanding the location where the Services are performed." *Id.* at 9. |
| DGCI 000136 ("PO I")<br><br>January 29, 2021 | "All disputes under this Agreement that are not disposed of by mutual agreement **may be decided** by recourse to an action at law or in equity **exclusively** in a United States Court of competent jurisdiction located **in the State from which this Agreement is issued**." Dkt. 19-2 at 13. | "This Agreement shall be governed and construed in accordance with the laws of the **State of Virginia**." *Id.* at 4. |
| OSBL-FFP-BWI-2021 ("Subcontract II")<br><br>September 29, 2021 | "[T]he parties **agree** to resolve disputes in the ***Circuit Court of Fairfax County*** in Fairfax, Virginia." Dkt. 19-3 at 8. | "Disputes arising under this Agreement . . . shall be subject to the laws of the **Commonwealth of Virginia**, irrespective of its conflicts of law provisions." *Id.* |
| ISBLSPares-001-BWI-2022 ("PO II")<br><br>No date is given, but the parties agree this document was executed in 2022.[2] | "The relevant forum for disputes arising under this Agreement shall be the ***Circuit court located in Fairfax[,] Virginia***." Dkt. 19-4 at 7. | "The Parties agree to submit to the laws of the **Commonwealth of Virginia** over all disputes arising from this Agreement. The Parties further stipulate that such jurisdiction shall exclude the application of Virginia's conflict of laws rules and, instead, shall submit to the application of Virginia's laws absolutely." *Id.* at 6–7. |

---

[2] *Compare* Dkt. 14-5 at 3 ("From December 2020 through May 2022, DGCI issued two subcontracts and two purchase orders to [Blackwater]."), *with* Dkt. 19 at 5 (listing the date of PO II as "2022").

The parties *agree* that the forum selection clauses in Subcontract I, PO I, and PO II are mandatory. *See* Dkt. 19 at 6 n.6 ("Blackwater will concede that the forum-selection clause in PO II is mandatory and requires suit to be brought in Virginia."); *id*. at 7 ("Blackwater agrees with DGCI that the forum-selection clauses in Subcontract I and PO I are mandatory."). The parties *disagree*, however, as to the meaning of "the State from which this Agreement is issued" in Subcontract I and PO I. Blackwater contends that state is Texas; DGCI contends that state is Virginia. The parties also disagree as to whether the forum selection clause in Subcontract II is mandatory, and thus enforceable. Finally, the parties disagree as to whether integration clauses in Subcontract II and PO II supersede the forum selection and choice-of-law clauses in Subcontract I and PO I.

Thus, the issues I must decide to resolve the instant motion are (1) whether Blackwater's claim for storage costs is covered by a forum selection clause; (2) the meaning of "the State from which this Agreement is issued" in Subcontract I and PO I; (3) whether the forum selection clause in Subcontract II is mandatory and enforceable; and (4) whether the integration clauses in Subcontract II and PO II supersede the parties' earlier agreements. Because the integration issue has the potential to moot the second and third issues, that is where I will begin my analysis.

## ANALYSIS

### A.  THE PARTIES' AGREEMENTS ARE NOT INTEGRATED

DGCI argues that "[b]ecause [Blackwater's] claims are related, under the integration clauses in either [Subcontract II[3] or PO II[4]], which post-date

---

[3] Subcontract II's integration clause states: "This Agreement and the attachments thereto shall be construed as the entire agreement of the Parties. Any writings, representations, or other agreements **pertinent to the Opportunity** are superseded unless referenced in this Agreement by specific reference." Dkt. 19-3 at 9 (emphasis added). The term "Opportunity" is not defined in Subcontract II.

[4] PO II's integration clause states: "This Agreement constitutes the entire understanding between the Parties. The Parties, by their signature below, indicate their intent to be bound by the terms and conditions contained herein. Any understanding or commitment prior to this Agreement but not expressly integrated herein shall be considered obsolete by execution of this Agreement." Dkt. 19-4 at 8.

4

[Subcontract I and PO I]," the requirement that disputes be brought in "the State from which this Agreement is issued" has been "arguably superseded." Dkt. 14 at 18. Blackwater retorts that "while the integration clauses in Subcontract II and PO II may suggest that these agreements are the entire agreements of the parties related to the duties and obligations in that particular agreement, this certainly does not mean that it supersedes *all* of the parties' agreements." Dkt. 19 at 10. DGCI counters that Blackwater itself alleges in its Complaint that "[e]ach contract and purchase order . . . are related to the same project, that is the mobile refinery project." Dkt. 1 at 2. But Blackwater responds that "each agreement stands alone with its own obligations and duties." Dkt. 19 at 10.

Both Subcontract II and PO II require the application of Virginia law. *See* Dkt. 19-3 at 8; Dkt. 19-4 at 6–7. Thus, to determine whether the parties' agreements have been integrated—such that the Subcontract I and PO I's forum selection clauses have been superseded by Subcontract II and PO II's forum selection clauses—I must look to Virginia law.[5]

"In Virginia, if parties have entered into multiple documents relating to a business transaction, a court must construe the documents together to determine the parties' intent." *Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017) (quotation omitted). The Supreme Court of Virginia has consistently held "that where two papers are executed at the same time or contemporaneously between the same parties, in reference to the same subject matter, they must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." *Countryside Orthopaedics, P.C. v. Peyton*, 541 S.E.2d 279, 284 (Va. 2001) (quotation omitted). But even

> [w]here several writings are connected by internal references to each other, . . . if they were executed on different dates and were not among all of the same parties, they will constitute a single contract as long as

---

[5] As a proud graduate of the University of Virginia School of Law, I am familiar with concepts of Virginia law.

>they involve the same subject matter and prove to be parts of an entire transaction.

*Hampton Roads Shipping Ass'n v. Int'l Longshoremen's Ass'n* (AFL-CIO), 597 F. Supp. 709, 716 (E.D. Va. 1984); *see also Tex. Co. v. Northup*, 153 S.E. 659, 662 (Va. 1930) ("The rule is one founded on reason; and when [there is] evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered.").

Here, the four agreements were executed over the course of three separate years: 2020, 2021, and 2022. Thus, the agreements were not executed contemporaneously. Nor do the agreements contain internal references to each other. The closest thing the agreements have to an internal reference is the fact that they each contain the words "mobile" and "refinery." But the context of those three words is different between the agreements. Subcontract I lists the "Project Name" as "Mobile Oil Refinery." Dkt. 19-1 at 3. PO I lists the "Project Name" as "Mobile Refinery." Dkt. 19-2 at 3. Subcontract II refers to "the Outside the Battery Limits component of the Mobile Oil Refinery ('the Project')." Dkt. 19-3 at 2. Lastly, PO II refers to "the Mobile Oil Refinery Inside the Battery Limits spare parts provision ('Opportunity')." Dkt. 19-4 at 2. None of the agreements expressly mention DGCI's prime contract with SOCOM, or earlier agreements between the parties related to DGCI Contract No. H9240320C0002. This omission is important because Subcontract II expressly integrates "Subcontractor's Change Order 2288-I-OSBL-222 Rev. 8," suggesting that earlier agreements would have been listed in the integration clause if they were actually related. Dkt. 19-3 at 9.

"Although multiple writings that relate to the same subject . . . should be construed together in order to ascertain the parties' intent, it does not necessarily follow that all of the writings constitute a single contract." 11 WILLISTON ON CONTRACTS § 30:26 (4th ed.). That is the case here. Blackwater's allegation that "[e]ach contract and purchase order . . . are related to the same project," Dkt. 1 at 2, does not give way to the argument that each of those agreements should be

6

treated as one contract. The titles of the agreements themselves reinforce Blackwater's arguments that "each agreement stands alone with its own obligations and duties" because "each agreement speaks of different equipment." Dkt. 19 at 10. Accordingly, I decline to find that the Fairfax County Circuit Court is the exclusive forum for this disagreement based on DGCI's integration argument.

\* \* \*

Having determined that the agreements are *not* integrated, and that each forum selection clause must be examined on its own, I turn to the question of which state the parties intended by "the State from which this Agreement issued."

### B. VIRGINIA IS "THE STATE FROM WHICH THIS AGREEMENT IS ISSUED"

Subcontract I and PO I each provide that "disputes under this Agreement that are not disposed of by mutual agreement may be decided by recourse to an action at law or in equity exclusively in a United States Court of competent jurisdiction located ***in the State from which this Agreement is issued***." Dkt. 19-1 at 15; Dkt. 19-2 at 13 (emphasis added). The parties agree that the exclusive language of these clauses render them mandatory, but they disagree as to the state from which the agreements were issued.

DGCI contends "it is undisputed that DGCI issued the agreements and its principal place of business is in Fairfax County, Virginia." Dkt. 14 at 13. For its part, "Blackwater concedes that, in each case, the subcontract or purchase order may have originated in Virginia. That is, it may have been prepared by DGCI in Virginia." Dkt. 19 at 6. Thus, it would seem that "the forum selection clause for [Subcontract I and PO I] requires that any action be brought in a U.S. Court in Virginia," meaning "the proper venue would be the Eastern District of Virginia, Alexandria Division." Dkt. 14 at 13. Yet, Blackwater contends that it was only "when Blackwater signed the agreement, sent it back to DGCI from Texas, and effectively accepted DGCI's offer . . . that a valid contract was 'issued.'" Dkt. 19 at 6. DGCI does not contest the general proposition that binding contracts are only created

after an offer is accepted. But DGCI argues that "acceptance and issuance are wholly separate concepts." Dkt. 20 at 2. I concur.

"As [the Texas Supreme Court has] often said, in one way or another, a contract's plain language controls, not what one side or the other alleges they intended to say but did not." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019) (cleaned up); *see also Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp.*, 556 S.E.2d 769, 771 (Va. 2002) ("It is well established that, when the terms of a contract are clear and unambiguous, a court must give them their plain meaning.").[6] Contracts are construed as a whole "in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Pathfinder*, 574 S.W.3d at 889; *see also Sweely Holdings, LLC v. SunTrust Bank*, 820 S.E.2d 596, 601 (Va. 2018) ("All of the different parts of an agreement must be viewed together, i.e., as a whole, and each part interpreted in the light of all of the other parts." (quotation omitted)).

"Lexicographers define 'issuance' to be the act of putting, sending, or giving out. The legal definition of the word is practically to the same effect—to send out officially; to deliver for use; to put into circulation." *Homestead Fire Ins. Co. v. Ison*, 65 S.E. 463, 465 (Va. 1909); *see also Issue*, BLACK'S LAW DICTIONARY (9th ed. 2009) ("2. To be put forth officially . . . 3. To send out or distribute officially"); *Issue*, THE MERRIAM-WEBSTER DICTIONARY (1997) ("to put forth or distribute officially"). No lay or legal definition of "issued" says anything about contract acceptance or contract formation. Blackwater itself concedes that "the subcontract or purchase order . . . was issued from Virginia." Dkt. 19 at 6. There is simply no support for Blackwater's position that acceptance and issuance are the same thing. Blackwater's ample case law about contracts becoming binding only after acceptance has no bearing on the plain meaning of the word "issued."

---

[6] Per the parties' agreement, Texas law governs Subcontract I, *see* Dkt. 19-1 at 9, and Virginia law governs PO I. *See* Dkt. 19-2 at 4.

Blackwater argues that because "Subcontract II and PO II mention Virginia specifically, by name, as the venue for disputes under those Agreements [that it] follows, therefore, that had the parties wanted Virginia as the proper forum under Subcontract I and PO I, they would have specifically said so." *Id.* at 7. Setting aside that Blackwater cites no authority to support this argument, considering all four agreements together leads to the conclusion that the parties intended to resolve their disputes only in Virginia. As Blackwater notes, "it would be fundamentally unreasonable" to try some claims in Texas and others in Virginia when all of the parties' contracts are related. *Id.* Thus, the parties' later specification of the Circuit Court of Fairfax County merely reinforces that the parties always intended to resolve their disputes in Virginia.

Because the lay and legal meanings of "issued" are "to put forth or distribute," and because DGCI drafted and distributed Subcontract I and PO I from Virginia, I conclude that "the State from which this Agreement is issued" refers to Virginia. Accordingly, the forum selection clauses in Subcontract I and PO I mandate that any disputes under those agreements be brought in a "United States Court" in Virginia. Dkt. 19-1 at 15; Dkt. 19-2 at 13. Because DGCI is located in McLean, Virginia, the proper venue is the United States District Court for the Eastern District of Virginia, Alexandria Division. Unfortunately, this determination does not resolve the issues before me.

Although all forum selection clauses point to *Virginia*, they do not all point to federal court. Subcontract I and PO I require that disputes be brought in a United States Court in Virginia, whereas PO II requires that disputes be brought in the Circuit Court of Fairfax County. The parties dispute whether Subcontract II's forum selection clause, which states that the Circuit Court of Fairfax County is the proper forum, is mandatory and enforceable. But the problem is the same either way: two forum selection clauses require disputes be brought in federal court in

9

Virginia, while another (or two others, if Subcontract II's forum selection clause is mandatory) requires disputes be brought in Virginia state court.[7]

## C. THIS CASE BELONGS IN THE EASTERN DISTRICT OF VIRGINIA

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Only "extraordinary circumstances" based on public-interest factors may justify a district court's refusal to enforce a valid forum selection clause. *Id.* Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* n.6 (quotation omitted). This case presents such an extraordinary circumstance.

It simply makes no sense to transfer some of Blackwater's claims to the Eastern District of Virginia while dismissing others for Blackwater to refile in the Fairfax County Circuit Court. Blackwater's claims should be tried in one lawsuit because "[e]ach contract and purchase order [is] related to the same project, that is the mobile refinery project." Dkt. 1 at 2. To split the claims between forums would needlessly increase the court congestion that warrants refusing to enforce a forum selection clause. "[P]iecemeal litigation is also not in the interest of justice." *Pride Int'l, Inc. v. Tesco Corp. (US)*, No. CIV.A. H-12-2889, 2014 WL 722129, at *3 (S.D. Tex. Feb. 24, 2014). DGCI recognizes this fact, which is why it has stated that it "will not contest" transfer to the Eastern District of Virginia. Dkt. 14 at 18 n.6. Accordingly, I recommend this matter be transferred to the United States District Court for the Eastern District of Virginia, Alexandria Division, where forum and venue are proper.[8]

---

[7] I do not reach the question of whether Subcontract II's forum selection clause is mandatory because it will not change the analysis either way, and it will not help me resolve what to do with the conflicting forum selection clauses that *are* mandatory.

[8] I do not reach the question of whether Blackwater's claim for unpaid storage costs is covered by a forum selection clause. If the claim is covered by a forum selection clause,

## CONCLUSION

For the reasons discussed above, I recommend DGCI's Motion to Dismiss (Dkt. 14) be **DENIED**, but its alternative Motion to Transfer be **GRANTED**, and this matter transferred to the United States District Court for the Eastern District of Virginia, Alexandria Division, where forum and venue are proper.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 28th day of May 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

then it should be transferred to the Eastern District of Virginia with the rest of the lawsuit. If the claim is not covered by a forum selection clause, it should still be transferred to the Eastern District of Virginia "in the interest of justice." 28 U.S.C. § 1406(a). Specifically, it should be transferred for the same reason the court should refuse to enforce the forum selection clauses in Subcontract II and PO II: the avoidance of piecemeal litigation. *See Andrade v. Chojnacki*, 934 F. Supp. 817, 830–31 (S.D. Tex. 1996) (transferring case "in the interest of avoiding piecemeal litigation, . . . [and] to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" (quotation omitted)).